McGREGOR W. SCOTT
United States Attorney
AMY SCHULLER HITCHCOCK
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

**FILED**

DEC 10 2019

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
       DEPUTY CLERK

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:17-cr-0060 MCE |
| Plaintiff, | PLEA AGREEMENT |
| v. | |
| PAMELA STEPHANIE EMANUEL, | |
| Defendant. | |

## I.  INTRODUCTION

### A.  Scope of Agreement.

The indictment in this case charges the defendant with violations of 18 U.S.C. § 1349 – Conspiracy to Commit Mail Fraud (Count One), 18 U.S.C. § 1341 – Mail Fraud (Counts Two through Sixteen) and 18 U.S.C. § 1028A(a)(1)- Aggravated Identity Theft (Count Seventeen). This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

### B.  Court Not a Party.

The Court is not a party to this plea agreement. Sentencing is a matter solely within the

PLEA AGREEMENT                                   1

discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of defendant, including activities which may not have been charged in the indictment. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw her guilty plea, and she will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence she will receive.

## II. DEFENDANT'S OBLIGATIONS

### A. Guilty Plea.

The defendant will plead guilty to Counts Two and Seventeen of the Indictment, charging Mail Fraud, in violation of 18 U.S.C. § 1341, and Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A, respectively. The defendant agrees that she is in fact guilty of these charges and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that she will not be allowed to withdraw her pleas should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by her in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement. The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

### B. Restitution.

The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of certain offenses. Defendant agrees that her conduct is governed by the Mandatory Restitution Act

PLEA AGREEMENT 2

pursuant to 18 U.S.C. § 3663A(c)(1)(A)(ii) and agrees to pay the full amount of restitution to all victims affected by her offenses, including, but not limited to, the victims covered in the factual basis, victims covered in those counts to be dismissed as part of the plea agreement pursuant to 18 U.S.C. § 3663A(a)(3), and other victims as a result of the defendant's conduct.

The defendant agrees to pay full restitution to the California Employment Development Department (EDD). The amount of restitution owed to the EDD will be approximately $773,773. The defendant also agrees that approximately 250 individuals were victims of identity theft as a result of the charged scheme. The defendant agrees to pay full restitution to any identified victims that suffered losses as a result of her conduct.

Restitution payments shall be by cashier's or certified check made payable to the Clerk of the Court.

### C. Fine.

The defendant reserves the right to argue to Probation and at sentencing that she is unable to pay a fine, and that no fine should be imposed. The defendant understands that it is her burden to affirmatively prove that she is unable to pay a fine, and agrees to provide a financial statement under penalty of perjury to the Probation Officer and the government in advance of the issuance of the draft Presentence Investigation Report, along with supporting documentation. The government retains the right to oppose the waiver of a fine. If the Court imposes a fine, the defendant agrees to pay such fine if and as ordered by the Court, up to the statutory maximum fine for the defendant's offenses.

### D. Special Assessment.

The defendant agrees to pay a special assessment of $200 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this plea agreement is voidable at the option of the government if she fails to pay the assessment prior to that hearing. If the defendant is unable to pay the special assessment at the time of sentencing, she agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

### E. Violation of Plea Agreement by Defendant/Withdrawal of Pleas.

If the defendant violates this plea agreement in any way, withdraws her plea, or tries to withdraw

PLEA AGREEMENT                                3

her plea, this plea agreement is voidable at the option of the government. If the government elects to void the agreement based on the defendant's violation, the government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. A defendant violates the plea agreement by committing any crime or providing or procuring any statement or testimony which is knowingly false, misleading, or materially incomplete in any litigation or sentencing process in this case, or engages in any post-plea conduct constituting obstruction of justice. Varying from stipulated Guidelines application or agreements regarding arguments as to 18 United States Code section 3553, as set forth in this agreement, personally or through counsel, also constitutes a violation of the plea agreement. The government also shall have the right (1) to prosecute the defendant on any of the counts to which she pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement. The determination of whether the defendant has violated the plea agreement will be under a probable cause standard.

In addition, (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no

claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

### F. Asset Disclosure.

The defendant agrees to make a full and complete disclosure of her assets and financial condition, and will complete the United States Attorney's Office's "Authorization to Release Information" and "Financial Affidavit" within five (5) weeks from the entry of the defendant's change of plea, including supporting documentation. The defendant also agrees to have the Court enter an order to that effect. The defendant understands that if she fails to complete truthfully and provide the described documentation to the United States Attorney's office within the allotted time, she will be considered in violation of the agreement, and the government shall be entitled to the remedies set forth in section II.E above, above.

## III. THE GOVERNMENT'S OBLIGATIONS

### A. Dismissals/Other Charges.

The government agrees to move, at the time of sentencing, to dismiss without prejudice the remaining counts in the pending indictment. The government also agrees not to reinstate any dismissed count except if this agreement is voided as set forth herein, or as provided in paragraphs II.E (Violation of Plea Agreement by Defendant/Withdrawal of Pleas), VI.B (Stipulated Guideline Calculations), and VII.B (Waiver of Appeal and Collateral Attack) herein.

### B. Recommendations.

1. Incarceration Range.

The government will recommend that the defendant be sentenced to the low end of the applicable guideline range (including the application of the mandatory statutory minimum term) as determined by the Court.

2. Acceptance of Responsibility.

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of her offense level if

the defendant clearly demonstrates acceptance of responsibility for her conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

C. **Use of Information for Sentencing.**

The government is free to provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate statements or arguments by the defendant, her attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

IV. **ELEMENTS OF THE OFFENSE**

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offenses to which the defendant is pleading guilty:

A. **Count Two, Mail Fraud, in violation of 18 U.S.C. § 1341**

First, the defendant knowingly participated in, devised, or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

Third, the defendant acted with the intent to defraud; that is, the intent to deceive or cheat; and

Fourth, the defendant used, or caused to be used, the mails to carry out or attempt to carry out an essential part of the scheme.

B. **Count Seventeen, Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A**

First, the defendant knowingly transferred, possessed or used a means of identification of another person;

Second, the defendant did so without lawful authority; and

Third, the unlawful use or possession of the mean of identification was during and in relation to a felony named in 18 U.S.C. § 1028A(c), to wit Mail Fraud.

The defendant fully understands the nature and elements of the crimes charged in the indictment to which she is pleading guilty, together with the possible defenses thereto, and has discussed them with her attorney.

## V.   MAXIMUM SENTENCE

### A.   Maximum Penalty.

The maximum sentence that the Court can impose on Count Two is 20 years of incarceration, a fine of $250,000, a 3 year period of supervised release and a special assessment of $100. For Count Seventeen, the Court must impose a mandatory 2 year term of incarceration, which must be served consecutive to any sentence imposed on Count One.

By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct. The defendant agrees that the restitution order is not restricted to the amounts alleged in the specific counts to which she is pleading guilty. The defendant further agrees, as noted above, that she will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

### B.   Violations of Supervised Release.

The defendant understands that if she violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to 3 additional years imprisonment.

## VI.   SENTENCING DETERMINATION

### A.   Statutory Authority.

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists

PLEA AGREEMENT 7

an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

**B.      Stipulations Affecting Guideline Calculation:**

The government and the defendant agree that there is no material dispute as to the following sentencing guidelines variables and therefore stipulate to the following:

1. Count One:

   a. Base Offense Level: 7 (U.S.S.G. § 2B1.1(a)(1)) because the offense carries a maximum term of imprisonment of 20 years

   b. Special Offense Characteristics:

      1) Loss Amount: The parties do not stipulate as to the applicable loss amount. The defendant agrees that the applicable loss amount is at least $550,000, but reserves the right to oppose a greater loss determination

      2) Victims: +2 (U.S.S.G. § 2B1.1(b)(2)(A)(i)) because the offense involved 10 or more victims

   c. Chapter Three Adjustments:

      1) Role in the Offense Adjustment: The parties do not stipulate as to the application of this adjustment. The government reserves the right to argue for enhancement pursuant to U.S.S.G. § 3B1.1(c)

      2) Abuse of Position of Trust: +2 (U.S.S.G. § 3B1.3) because the defendant abused a position of trust in a manner that significantly facilitated the commission or concealment of the offense

   d. Acceptance of Responsibility: See paragraph III.B.2 above

2. Count Seventeen:

   a. Guideline sentence is the term of imprisonment required by statute, or 24 months consecutive to sentence imposed for Count 1 (U.S.S.G. § 2B1.6(a))

3. Departures or Other Enhancements or Reductions:

The parties agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"), or cross-references, except that the government may move for a departure or an adjustment based on post-plea obstruction of justice (§3C1.1). The defendant is free to recommend to the Court whatever

PLEA AGREEMENT                                    8

sentence she believes is appropriate under 18 U.S.C. § 3553(a). The government reserves the right to oppose any variance under 18 U.S.C. § 3553(a).

## VII.     WAIVERS

### A.     Waiver of Constitutional Rights.

The defendant understands that by pleading guilty she is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to testify on her behalf; (e) to confront and cross-examine witnesses against her; and (f) not to be compelled to incriminate herself.

### B.     Waiver of Appeal and Collateral Attack.

The defendant understands that the law gives the defendant a right to appeal her guilty plea, conviction, and sentence. The defendant agrees as part of her pleas, however, to give up the right to appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not exceed the statutory maximums for the offenses to which she is pleading guilty. The defendant specifically gives up the right to appeal any order of restitution the Court may impose.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant understands that these circumstances occur infrequently and that in almost all cases this Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

Notwithstanding the government's agreements in paragraph III.A above, if the defendant ever attempts to vacate her pleas, dismiss the underlying charges, or modify or set aside her sentence on any of the counts to which she is pleading guilty, the government shall have the rights set forth in Section II.E herein.

PLEA AGREEMENT              9

### C. Waiver of Attorneys' Fees and Costs.

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

### D. Impact of Plea on Defendant's Immigration Status.

Defendant recognizes that pleading guilty may have consequences with respect to her immigration status if she is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including offenses to which the defendant is pleading guilty. The defendant and her counsel have discussed the fact that the charge to which the defendant is pleading guilty is an aggravated felony, or a crime that is likely to be determined to be an aggravated felony under 8 USC § 1101(a)(43), and that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, it is virtually certain that defendant will be removed. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including her attorney or the district court, can predict to a certainty the effect of her conviction on her immigration status. Defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her plea may entail, even if the consequence is her automatic removal from the United States.

## VIII. ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

//
//
//

### IX. APPROVALS AND SIGNATURES

#### A. Defense Counsel.

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: Dec. 5, 2019

TIMOTHY ZINDEL
Attorney for Defendant

#### B. Defendant:

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: Dec. 5, 2019

PAMELA STEPHANIE EMANUEL
Defendant

#### C. Attorney for United States:

I accept and agree to this plea agreement on behalf of the government.

Dated: 12/10/19

McGREGOR W. SCOTT
United States Attorney

AMY SCHULLER HITCHCOCK
Assistant United States Attorney

PLEA AGREEMENT                     11

EXHIBIT "A"

Factual Basis for Pleas

PAMELA EMANUEL, GREGORY LEE, SERGIO REYNA, RUSSELL WHITE, III, and BRITTANY MAUNAKEA participated in a scheme to defraud the California Employment Development Department (EDD) of unemployment insurance (UI) benefits. The defendants conspired to apply for EDD UI benefits in the names of identity theft victims. On many occasions, those identities were obtained by EMANUEL through her employment with EDD.

Law enforcement interviewed many of the individuals whose identities were used to procure the UI funds. All of the individuals interviewed were victims of identity theft and reported that the UI claims were filed without their knowledge.

From October 1998 to July 2016, EMANUEL was employed at EDD. From 1998 to 2006, EMANUEL conducted UI eligibility reviews for EDD. During the pendency of the scheme, she was a Tax Compliance Representative at EDD, a position which provided her access to confidential personal identifying information and tax information of California's workforce. EMANUEL's work at EDD provided her the visibility and insight as to how the EDD UI claim process works, and how it could be manipulated.

For example, on August 29, 2014, EMANUEL accessed the EDD tax system to search multiple tax records for which she had no legitimate employment reason to access. Likewise, on February 12, 2016, EMANUEL searched employer accounts for which she had no legitimate reason to access.

The co-conspirators filed the fraudulent claims using EDD's online system. EMANUEL utilized a paid Virtual Private Network (VPN) service ("hidemyass.org") in an effort to avoid detection. For example, on April 2, 2016, EMANUEL conspired to file a fraudulent claim in the name of Person B, a real person, using the VPN service. EMANUEL and her co-conspirators avoided detection by using the real identities of real workers, but reporting fictitious companies as the last employer, purportedly located at addresses controlled by the co-conspirators.

Many of the fraudulent UI claims filed using the stolen identities requested that EDD debit cards containing UI funds be sent to addresses associated with and/or controlled by the co-conspirators. For example, on April 17, 2015, a Bank of America debit card was mailed to an address controlled by the defendants.

ATM surveillance photographs show various co-conspirators using the EDD debit cards to withdraw fraudulently obtained UI funds. These photographs show EMANUEL using at least one of these EDD debit cards to withdraw fraudulently-obtained UI funds. EMANUEL wore heavy winter clothing in an attempt to obscure her appearance from the surveillance cameras. The ATM photographs demonstrate that the fraudulently-obtained EDD debit cards were passed amongst members of the conspiracy.

On or about July 14, 2016, a search warrant was executed at Lee's residence. Among other items, agents found paper and legal pads with lists of personal identifying information of victims whose identities were used in the scheme. Next to one of the stolen identities, the name "Pam" was listed, next to EMANUEL's cell phone number, along with the address "4335 Continental Way, Stockton, CA," which is Reyna's former address. On the day of execution of the search warrant at Lee's residence, EMANUEL called in sick to work at EDD; she never returned to work, and retired from service shortly thereafter.

On or about September 21, 2016, a search warrant was executed on a Google Gmail account used by EMANUEL ("hair487"). Agents found an email from EMANUEL to Lee in which EMANUEL sent Lee personal identifying information and employer information of identity theft victims that were used by the conspirators to file UI claims. Agents also found correspondence with hidemyass.com, the

PLEA AGREEMENT                                   A-1

VPN service company facilitating internet access via masked IP addresses, establishing a paid account to the "Pro VPN Plan".

Law enforcement also reviewed EMANUEL's cell phone records. From November 7, 2014 to November 4, 2015, there were 1,408 outgoing calls made to EDD's UI telephone number. EDD requires periodic re-certification of UI claims, which can be done by telephone. From November 26, 2014 to October 28, 2015, there were 286 outgoing calls made to the Bank of America Debit Cardholder Services phone number. From October 26, 2014 to February 25, 2015, there were 72 contacts with Lee's cell phone.

In total, the conspiracy to defraud the EDD claimed, or sought to obtain, over $2,400,000 in fraudulent UI benefits. The conspirators actually obtained approximately $887,199 in fraudulent UI benefits as a result of the scheme. On November 7, 2014, EMANUEL made an outgoing call to EDD's UI phone number in furtherance of the scheme. The total loss of the scheme after November 7, 2014 was approximately $773,773. The total loss claimed by the conspiracy after November 7, 2014, and within the scope of jointly undertaken activity, was approximately $2,246,170.

*I have read and carefully reviewed the above Factual Basis for my plea with my attorney. I agree that as it concerns my conduct, it is correct.*

Dated:                                    /s/ Pamela Stephanie Emanuel
                                          PAMELA STEPHANIE EMANUEL
                                          Defendant